673 So.2d 894 (1996)
Ruth C. FLANAGAN, Appellant,
v.
Alan M. FLANAGAN, Appellee.
No. 95-01944.
District Court of Appeal of Florida, Second District.
May 3, 1996.
Louis S. Erickson, Naples, for Appellant.
Tom Grogan, P.A., Naples, for Appellee.
RYDER, Acting Chief Judge.
This appeal arises from an order modifying the child support that Ruth Flanagan must pay her former husband, Alan Flanagan. Alan has custody of the parties' two sons born during their marriage. We reverse the order of modification, in part, because, as will be discussed below, the trial court erred in establishing the amount of support Mrs. Flanagan should pay and in determining some of the arrearages that she owed to her former husband.
Mr. and Mrs. Flanagan were married for seven years, and two children were born of the marriage. Before the parties met, Mrs. Flanagan gave birth to a son, Bryant. During *895 the marriage, Bryant's birth certificate was amended to show Alan Flanagan as his father, however, Alan did not formally adopt Bryant. The parties stipulated that Alan was not Bryant's natural father.
Ruth Flanagan raised six points on appeal. Her sixth issue contended that the trial court erred in refusing to require Alan to provide support to Bryant. We affirm the court's decision on this matter without discussion. We divide Mrs. Flanagan's remaining five points into three categories: monthly child support, attorney's fees and arrearages.

I. MONTHLY SUPPORT FOR THE CHILDREN OF THE MARRIAGE.
When the parties' marriage was originally dissolved, Ruth Flanagan was attending school to become a licensed practical nurse. While she was in school, the lower court imputed income to her in the amount of $4.35 per hour, the minimum wage, and ordered her to pay $49.00 per week as child support for the two children born during the marriage. In June 1993, Alan Flanagan filed a motion to modify the support on the grounds that Ruth had graduated from nursing school and was now employed. Ruth does not dispute that her employment was a substantial change in circumstances that warranted a modification. Instead, she challenges the amount the trial court ordered her to pay, asserts that the award should not have been made retroactive to the date of Alan's petition, and claims that Alan's present wife's income should have been taken into account in determining his income for support purposes under the guidelines.
Ruth does not earn a fixed monthly salary. She is employed by a company that provides nurses to hospitals, nursing homes and for private duty. Both her hours worked and her hourly rate vary, depending on the availability of work and where she performs her job. The evidence showed that from January 1995 until the date of the hearing, March 22, 1995, Ruth earned gross income of approximately $1,515.50 per month. During a few months in 1994, she did earn a somewhat larger amount, perhaps as much a $1,700.00 per month, gross income. The order of modification states that "based on Ruth C. Flanagan's most current earning history, this court does impute to her a net income of $1,500.00 per month." The court added this imputed income to Alan's net income of $2,303.56 to reach a combined income of $3,803.56 for child support purposes, and found that Ruth's percentage of the combined total was 39%. It then looked to the guidelines, determined that the monthly amount of support for two children based on the parents' combined income was $1,274.00 per month, and ordered Ruth Flanagan to pay 39% of the amount, or $481.26 per month. See § 61.30, Fla.Stat. (1993).
In her first issue on appeal, Ruth Flanagan challenges the court's determination of her income for purposes of establishing the child support she owes under the guidelines. We agree with her contention that the trial court abused its discretion in imputing net income to her in the amount of $1,500.00. See Stodtko v. Stodtko, 636 So.2d 814, 815 (Fla. 3d DCA 1994) (absent special circumstances, trial court may not impute income to a spouse at a level that the spouse has never before earned in her line of work). We note that the court specifically stated it arrived at this amount based on Ruth's most current earning history. While that history certainly supports imputation of gross income in the amount of $1,500.00, it does not support imputation of net income in that amount. See § 61.30(3)(a)-(f), Fla.Stat. (1993) (listing deductions to be made from gross income in determining net income for purposes of the guidelines).
Ruth also claims the court erred in failing to deduct her expenses in raising Bryant from her gross income in determining her net income available for support of the two children born during her marriage. We note that the guidelines do not directly address the situation presented here. Section 61.30(3)(f), Florida Statutes (1993), allows a deduction from gross income for "[c]ourt-ordered support for other children which is actually paid." Because Bryant lives with Ruth, she obviously does not pay a court-ordered amount for his support, and section 61.30(3)(f) is inapplicable. Hutslar v. Lappin, 652 So.2d 432 (Fla. 1st DCA 1995). Section 61.30(11)(k), however, permits a *896 court to adjust a parent's share of the minimum child support award based on:
Any other adjustment which is needed to achieve an equitable result which may include, but not be limited to, a reasonable and necessary existing expense or debt. § 61.30(11)(k), Fla.Stat. (1993).
While this provision is discretionary, we hold that the lower court abused its discretion by failing to consider Ruth's preexisting support obligation to Bryant in determining the amount she could pay for support of her two later-born sons. See Hutslar.
We, therefore, reverse and remand to the trial court to redetermine Ruth's monthly child support payment in accordance with this opinion. We direct the lower court to recalculate the amount of Ruth's net monthly income and to reduce the minimum award under the guidelines by an amount that takes into consideration what Ruth must reasonably expend for Bryant's support. If necessary, the court may take further evidence on these issues.
We affirm the court's decision, challenged in point II of this appeal, to make the modification retroactive to the date of Alan Flanagan's petition. Fotorny v. Fotorny, 397 So.2d 329 (Fla. 4th DCA 1981). As to Mrs. Flanagan's fourth point, we affirm the court's decision to exclude evidence about Alan Flanagan's present wife's income. The income of a party's spouse is relevant in child support proceedings if the party asks the court to depart from the guidelines because of a support obligation to a subsequent child. § 61.30(12), Fla.Stat. (1993). Although Mr. Flanagan and the new Mrs. Flanagan have a child of their own, he has not sought to reduce his portion of the support obligation to his previously born sons based on the costs of raising his new child. The new Mrs. Flanagan's income is therefore irrelevant.

II. ATTORNEY'S FEES.
In her third point on appeal, Ruth Flanagan contends that the trial court erred in ordering her to pay her former husband's attorney's fees. The order on appeal does award fees to the husband, but does not set the amount of fees. As such, this portion of the order is nonfinal and nonappealable. McIlveen v. McIlveen, 644 So.2d 612 (Fla. 2d DCA 1994). We lack jurisdiction to review the issue of entitlement to fees and deny review of this point.

III. ARREARAGES.
The fifth issue on appeal challenges the court's determination of arrearages Ruth owes to Alan Flanagan in three areas: medical expenses, day care, and past due child support. We first note that the order states that Ruth owes Alan "for back medical and dental expenses the sum of $2,692.21." In actuality, the testimony was that Ruth owed $1,766.86 for medical and dental expenses, $402.50 for day care expenses and $522.85 for child support incorrectly returned to her. All these expenses totaled $2,692.21. Ruth Flanagan does not contest the portion of this amount owed for incorrectly returned child support.
A large part of the amount awarded for medical and dental expenses was for insurance premiums. The record before us does not contain the parties' original marital settlement agreement, so we do not know whether it obligated Ruth to pay a portion of the medical and dental insurance premiums for the children. A stipulated modification of the marital settlement agreement was, however, approved on September 3, 1991, and provided that "[t]he Husband shall maintain the children on his health insurance unless and until the Wife has better insurance available to her and then the parties shall cooperate with a view towards determining which medical insurance policy is most appropriate for the children." Mr. Flanagan's petition to modify did not mention anything about insurance premiums. Moreover, his pretrial stipulation stated he was responsible for payment of the premiums, but that medical and dental costs not covered by insurance were to be shared by the parties.
We also note that the testimony established that Mr. Flanagan's employer provided his insurance coverage at no charge. He, however, paid $65.00 per month for medical and $22.26 per month for dental coverage for his family, including his new wife, his new child and the two children from his marriage *897 to Ruth. The premium remained the same no matter how many family members were covered. On his financial affidavit, he deducted these premium costs from his gross income to arrive at his net income of $2,303.56, the amount the lower court used in its calculation under the guidelines. Mr. Flanagan cannot deduct this sum from his gross income, thereby reducing his net income for child support purposes, and then be reimbursed by his former wife for the expense.
Consequently, we reverse the court's award of $1,766.86 for past due medical and dental expenses. We remand for the trial court to determine whether, under the marital settlement agreement, as modified, Mrs. Flanagan is obligated to pay any amounts for the children's medical and dental insurance premiums. If the trial court finds she is so obligated, it must adjust the husband's net income accordingly.
The court's award of arrearages included $402.50 for day care expenses. Nothing in the record indicated that, in calculating these expenses, the court followed the procedure set out in section 61.30(7), Florida Statutes (1993) (child care costs shall be reduced by 25%, and then added to the basic obligation). We reverse the award for these costs and remand for recalculation pursuant to the statute.
As to the lower court's award of back child support in the amount of $1,207.80, it is not evident from the record whether the court considered that one of the children from the marriage had lived with Ruth Flanagan for a nine-month period. We note that under the guidelines the court may reduce the amount of support paid to the custodial parent, if the child visits for more than twenty-eight days with the noncustodial parent. § 61.30(11)(g), Fla.Stat. (1993). We reverse the award of back child support and remand to the lower court to consider whether Mrs. Flanagan is entitled to a reduction in sum owed based on her son's extended residence with her.
Affirmed in part, reversed in part and remanded.
CAMPBELL and SCHOONOVER, JJ., concur.